STEVENSON & TOMM, a Partnership composed of C. M. Stevenson and L. E. Tomm, Plaintiffs in Error,

v.

H. Allan BARNES and Rea Barnes, Defendants in Error.

No. 36168.

Supreme Court of Oklahoma.

Sept. 28, 1954.

George W. Reed, Jr., Harry Seaton, Tulsa, for plaintiffs in error.

Hudson, Hudson & Wheaton, Tulsa, for defendants in error.

CORN, Justice.

Plaintiffs brought this action seeking to recover broker's commission allegedly owing by reason of their having performed all the services required under an oral contract of employment for the sale of real estate owned by defendants.

The second amended petition, upon which the case was tried, alleged plaintiffs were licensed real estate brokers with whom defendants orally listed their apartment house for sale under the usual commission arrangements; plaintiffs advertised the property and secured a prospective buyer (Dritch); plaintiffs prepared and submitted a purchase contract to this buyer who executed the instrument after having same examined by her attorney. Plaintiffs, the buyer and her attorney then took the contract to defendant, Rea Barnes, and after inspecting same and making certain changes (not material to this controversy) she executed the contract in behalf of herself and husband. The contract was the customary purchase contract for sale of the described property for $72,500. The sale was not consummated because of defendants' inability to pay off and discharge the balance due upon the mortgage held by an insurance company. Further, that plaintiffs had done everything incumbent upon them under the oral contract of employment, the written contract being plead only to show plaintiffs had secured a buyer upon the terms offered.

After various motions and demurrers had been heard and overruled the defendants' amended answer denied generally the matters alleged, other than that plaintiffs were real estate brokers and defendants owned the property in question. By way of defense it was alleged the sale was not consummated because of the inability to discharge the mortgage indebtedness, the existence of which plaintiffs had knowledge, and that after failure of the sale plaintiffs declared all negotiations ended and returned the prospective purchaser's earnest money deposit; that thereafter plaintiffs and defendants entered into another oral contract, and pursuant thereto plaintiffs again showed the property to prospective buyers. Other matters were plead in defendants' answer

which are not essential to consideration of the case.

By way of reply the plaintiffs denied having advised defendants the mortgage indebtedness could be paid and discharged; that they called off the negotiations for sale of the property upon ascertaining the impossibility of paying off the mortgage, or that there was a subsequent oral contract for sale of this property or that same was shown to other prospective purchasers.

The issues raised by the pleadings were tried to the court without a jury. The evidence adduced at the trial substantially supported the respective parties' theories. The evidence did disclose that while the mortgage could not be paid off, the mortgagee offered to accept a new mortgage at a slightly higher interest rate, but the buyer (Dritch) refused such offer even though plaintiffs and defendants agreed they would divide the cost of securing the new loan and allow the buyer the cash difference in the interest rate over the loan period. A letter from plaintiffs to the prospective buyer was received in evidence, the language of which unequivocally disclosed that plaintiffs, subsequent to the alleged failure of the transaction because of defendants' fault, were treating the transaction as still open to negotiation and urging the buyer to accept such offer and make a loan application.

It was conceded the sole cause of the prospective buyer's refusal to fulfill the contract was the defect of title arising out of the mortgage, which would not permit the existing loan to be paid off. Plaintiffs' evidence was that they knew of the existence of the mortgage, but had no independent knowledge of the terms and requirements thereof, and did not learn that this could not be accomplished for about two months after they secured a buyer under the binding contract of sale upon the terms and conditions under which the property had been listed for sale.

The defendant (Rea Barnes) testified one of the brokers called upon her with a contract for a price substantially less than that for which the property was listed for sale, and she examined the instrument to see if mention was made of the mortgage. Upon advising the broker the price was unacceptable she also queried him concerning sale of the property with the mortgage on it and was told that the mortgagee could not keep defendants from selling their property.

After the evidence was concluded the case was continued from time to time for final argument and decision by the court. April 10, 1953 the trial court entered judgment for defendants, the journal entry of judgment in part being as follows:

"The Court further finds said plaintiffs had been real estate brokers for a period of more than twenty-five years and were experts in the real estate business; that the plaintiffs knew of the existence of said mortgage on the property involved, from the beginning, and that before the defendants entered into the contract of sale with the said Sarah Dritch, the defendant, Rea Barnes, inquired of and from the plaintiffs as to whether she could sell said property with the mortgage on it and that the plaintiffs assured her that she could and that the loan company could not keep her from selling the property. The Court further finds that said mortgage could not be prepaid and that by reason thereof, said Sarah Dritch refused to accept the defendants' title to said property and refused to comply with said real estate contract for the purchase of said property. The court further finds that by reason of the premises the plaintiffs are not entitled to recover their commission as against the defendants herein."

The plaintiffs' argument for reversal of this judgment is that the trial court's findings of fact are not supported by the evidence. Plaintiffs rely upon the general rule to the effect that when a real estate transaction fails because of a title defect, of which the broker is without knowledge, the broker is entitled to his commission, since his employment was solely to secure a buyer who was ready, able and willing to purchase the property, and the failure to consummate the sale results from the title defect and not from any fault of the broker. Such has been the consistent holding of this court. Gorman v. Hargis, 6 Okl. 360, 50 P. 92; Yoder v. Randol, 16 Okl. 308, 83 P. 537, 3

L.R.A.,N.S., 576; Richardson v. Hill, 196 Okl. 135, 163 P.2d 528.

Plaintiffs insist that application of the foregoing rule is conclusive of the question here presented since, under their interpretation of the evidence, the trial court's findings were not supported thereby. Plaintiffs point out the oral contract of employment made no mention of the mortgage or any condition relative to prepayment thereof, and, although plaintiffs knew of the mortgage, they knew nothing of its terms, so that any defect of title was without knowledge or fault on their part. They point out that defendants orally listed the property for sale prior to January 20, 1948, the day the contract of sale was dated, but that nearly three months expired before they learned the mortgage could not be paid off, this being after they had done everything required under their contract. Upon this basis plaintiffs contend that the rule above referred to, viz., that a broker who procures a purchaser ready, able and willing to buy upon prescribed terms is entitled to his commission, is decisive of the question presented.

We are unable to accept such conclusion. The evidence reflects that plaintiffs did find a prospective buyer after their contract of employment. However, it further appeared that this buyer was not willing to purchase upon the terms specified in the listing. And, as disclosed by defendants' evidence, it was during this period of negotiations with defendant as to the ultimate price of the property that plaintiffs were apprised of the existence of the mortgage, and queried as to the possibility of a sale under such circumstances. Although the evidence was in sharp conflict, there was evidence from which the trial court could find plaintiffs knew of the mortgage and this question was resolved in defendants' favor. Since the trial court's judgment has the same force as a jury verdict based upon conflicting evidence, this court will not substitute its judgment for that of the trial court. 12 O.S.1951 § 556; Quinton v. Webb, 207 Okl. 133, 248 P.2d 586.

One circumstance reflected by the evidence, and undoubtedly accorded weight by the trial court, is noteworthy. Two months after the contract of sale had been executed and following the buyer's refusal to complete the transaction, plaintiffs wrote the prospective buyer that the insurance company would not accept prepayment of the mortgage, but would take a new mortgage for 10 years with a prepayment clause, at a higher rate of interest. The letter stated that because of the difficulty encountered plaintiffs had agreed with defendants to rebate the buyer for the cost of securing such loan and the amount of the difference in the interest rate, so that a new loan would cost no more than the original contract. The buyer was urged to accept this means of closing the deal and to make new loan application at once. This evidence, alone, clearly indicates plaintiffs still considered the transaction as incomplete and subject to negotiation, contrary to their claim of having done everything incumbent upon them under their contract so that they were entitled to their commission.

The question remains as to the rule to be applied under the circumstances reflected by the evidence. Concededly the transaction failed because of a defect in defendant's title. From the evidence the trial court found that plaintiffs knew of the existence of the defect before defendants entered into the contract of sale upon which plaintiffs rely as showing their own performance under the contract of employment. In such cases the applicable rule is that stated in 12 C.J.S., Brokers, § 95(4):

"It is essential to the broker's right to commissions where the transaction in question fails of consummation because of a defect in, or absence of, title, that he himself is not at fault and that he does not have knowledge or notice of the defect in, or absence of, title at the time of finding the customer. * * *"

The rule above stated was recognized and applied in the early case of Monzingo v. Bowers, 135 Okl. 225, 275 P. 339. In that case the contention was made that failure of consummation of a sale due to imperfection of the seller's title was no defense to the broker's suit to recover his

commission for negotiating a sale. Both the Gorman and Yoder cases, supra, were cited as supporting such contention. However, in that case the court found the broker had knowledge of the facts relative to condition of the title involved and, with such knowledge, could not be said to have produced a ready, willing and able purchaser.

We are of the opinion the trial court properly found from the evidence that plaintiffs had knowledge of the title defect which prevented consummation of the sale, and was correct in holding plaintiffs were not entitled to recover a commission.

Judgment affirmed.

HALLEY, C. J., JOHNSON, V. C. J., and WELCH, DAVISON, ARNOLD, WILLIAMS and BLACKBIRD, JJ., concur.